UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JUSTINIAN RWEYEMAMU and | : | |
| BUGURKA ORPHANS AND | : | |
| COMMUNITY ECONOMIC | : | 3:05-CV-00969 (WWE) |
| DEVELOPMENT, INC., | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| MICHAEL COTE and THE NORWICH | : | |
| ROMAN CATHOLIC DIOCESAN | : | |
| CORPORATION, | : | |
| | : | |
| Defendants. | : | February 7, 2006 |

RULING ON DEFENDANTS' MOTION TO DISMISS

The actions arises from claims of allegations of racial discrimination in the

employment context, defamation, tortious interference in business relations and

intentional infliction of emotional distress brought by Justinian Rweyemamu ("the

plaintiff"), an ordained priest of the Roman Catholic Church, and Bugurka Orphans and

Community Economic Development, Inc. ("BOCED"), a nonprofit charitable

organization, against the defendants, Michael Cote, the Bishop of the Diocese of

Norwich, and the Norwich Roman Catholic Diocesan Corporation (collectively, "the

Church"). The plaintiff claims that the defendants discriminated against him because of

his race and in retaliation for filing claims with the Connecticut Commission on Human

Rights and Opportunities ("CHRO") and the Equal Employment Opportunity

Commission ("EEOC").  He invokes the jurisdiction of the Court pursuant to Title 28, 42

U.S.C. sections 1331, 1343(a) and 1367(a) and Title VII, 42 U.S.C. sections 2000e et

1

seq.  The defendants assert that the Court lacks jurisdiction over his claims due to the

Free Exercise Clause of the First Amendment of the United States Constitution, known

as the "ministerial exception."  Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), the

defendants move to dismiss the plaintiff's Complaint in its entirety.


I.      BACKGROUND

        Consistent with the standard of review for a motion to dismiss, the Court

considers all of the factual allegations as true.

        The plaintiff Rweyemamu is an ordained priest employed by the Catholic Church

under the auspices of the Diocese of Norwich (Connecticut).   He is a native of

Tanzania and became a United States citizen in 2004.  He is black.

         BOCED is a non-profit charitable organization, operating under provisions of

Connecticut law, which raises funds on behalf of needy citizens of Tanzania.  The

plaintiff founded BOCED in 1998.  It currently is governed by a board of persons not

employed by the Catholic Church.[1]

        The plaintiff has been a parochial vicar for over ten years, the last five of which

have been at the St. Bernard's Church in Rockville, Connecticut.  During this time, he

lived in the rectory at the Church.  The plaintiff claims that his performance ratings were

consistently satisfactory or better.

        In April 2004, a vacancy opened for the position of parish administrator of St.

Bernard's and the plaintiff applied for the position.  He was not selected for the job;

_____

        [1]BOCED's state law claims shall be addressed following the Court's analysis of the
plaintiff Rweyemamu's federal claims.

instead, a deacon of the church, a white male, was chosen.  The plaintiff asserts that the deacon, unlike the plaintiff, was not qualified for the position. The plaintiff also applied for pastor of the church and, throughout August 2004, applied for other appointments within the church.  He was not hired for any of these positions.

The plaintiff filed a complaint with church officials, specifically challenging whether the defendant Cote had followed canon law and church custom in filling the administrative vacancies.  Subsequently, in September 2004, he filed claims of employment discrimination with the CHRO and the EEOC, claiming that these employment decisions were made on account of the plaintiff's race and national origin.

 The CHRO dismissed the plaintiff's complaint due to lack of subject matter jurisdiction and the plaintiff then appealed this dismissal to the Connecticut Superior Court.  Justinian Rweyemamu v. CHRO, et al., Docket No. Cv-05-4003388-S (J.D. New Britain).  On October 19, 2005, the Superior Court (Owens, J.T.R.) dismissed the plaintiff's appeal, finding a lack of jurisdiction pursuant to the Free Exercise Clause of the United States Constitution.

A month after the plaintiff's CHRO's complaint was dismissed and while the Superior Court's decision was still pending, Cote terminated the plaintiff's employment and ordered him to vacate his employer-owned home.  The plaintiff appealed his termination to the Vatican and remained in his home.  Although he has not yet received a disposition of his appeal to the Vatican, the plaintiff has been evicted from his home.

The plaintiff now claims employment discrimination, intentional infliction of emotional distress, tortious interference with business relations and defamation.

3

The Court will dismiss the plaintiff's complaint because it lacks subject matter jurisdiction over his claims.

II.     DISCUSSION

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) "challenges the court's statutory or constitutional power to adjudicate the case before it."  2A James W. Moore et al., Moore's Federal Practice, paragraph 12.07, at 12-49 (2d ed. 1994).  Once the question of jurisdiction is raised, the burden of establishing subject matter jurisdiction rests on the party asserting such jurisdiction.  "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence.  After construing all ambiguities and drawing all inferences in a plaintiff's favor, a district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1)."  Aurecchione v. Schoolman Transportation System, 426 F.3d 635, 638 (2d Cir. 2005).

Alternatively, a motion to dismiss under Fed. R. Civ. P. 12(b)(6) should be granted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  The function of a motion to dismiss "is merely to assess the legal feasability of the complaint, not to assay the weight of the evidence which might be offered in support thereof."  Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980). In considering a motion to dismiss under Rule 12(b)(6), a court must presume all factual allegations of the complaint to be true and must draw any reasonable inferences in favor of the non-moving party.  Cruz v. Beto, 405 U.S. 319, 322 (1972).

The defendants claim that the plaintiff's claims are improperly before this Court

4

because, pursuant to the Free Exercise Clause of the First Amendment of the United States Constitution, the Court lacks subject matter jurisdiction.  They also argue that the plaintiff has not exhausted his administrative remedies in that he has not received a right to sue letter from the EEOC.  The Court may not consider this latter argument because it is lacking subject matter jurisdiction pursuant to the Free Exercise Clause.  Furthermore, the Court must decline to exercise its supplemental jurisdiction over the plaintiff's' state law claims and shall dismiss these claims accordingly.

The Free Exercise Clause of the First Amendment, otherwise known as the "ministerial exception," preserves a religious institution's right to be free from governmental entanglement with its management of its internal affairs.  The Free Exercise Clause protects the power of religious organizations "to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine."  Kedroff v. St. Nicholas Cathedral of the Russian Orthodox Church in North America, 344 U.S. 94, 116, 73 S.Ct. 143, 97 L.Ed. 120 (1952).   "A church's selection of its own clergy is one such core matter of ecclesiastical self-governance with which the state may not constitutionally interfere."  Bollard v. California Province of Society of Jesus, 196 F.3d 940, 946 (9th Cir. 1999).

> If a suit involves an employment decision by a church with respect to one of its ministers, courts lack jurisdiction because the Free Exercise Clause bars court involvement in the employment relationship between a minister and a church.  This absolute bar has developed under a line of Supreme Court cases interpreting the Free Exercise Clause as prohibiting courts from encroaching on a church's ability to manage its internal affairs, particularly with respect to decisions regarding the selection and retention of clergy.

Kraft v. Grace Church, et al., 2004 WL 540327 (S.D.N.Y.), *4.  See, e.g., Gonzalez v.

Roman Catholic Archbishop of Manilla, 280 U.S.1, 16, 50 S.Ct. 5, 74 L.Ed. 131 (1929) ("it is the function of the church authorities to determine what the essential qualifications of a chaplain are and whether the candidate possesses them"); Serbian Eastern Orthodox Diocese v. Milivojevich, 426 U.S. 696, 717, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976) ("questions of church discipline and the composition of the church hierarchy are at the core of ecclesiastical concern").

Although the Second Circuit has not had the opportunity to do so, numerous Courts of Appeal have considered whether the Free Exercise Clause precludes clergy from suing church employers for alleged violations of federal anti-discrimination statutes.  In Minker v. Baltimore, 894 F.2d 1354, 1356 (D.C.Cir. 1990), the court affirmed the dismissal of a minister's ADEA claim, holding that "the determination of whose voice speaks for the church is per se a religious matter" and therefore does not fall under the rubric of Title VII.  Similarly, in Werft v. Desert Southwest Annual Conference of the United Methodist Church, 377 F.3d 1099, 1103 -1104 (9th Cir. 2004), the court affirmed the dismissal of a minister's Title VII claim, finding that the claim involved the employment relationship between the church and minister and was, therefore, barred by the Free Exercise Clause.

The plaintiff argues that the church cannot use the Free Exercise Clause as a shield against the applicability of federal discrimination statutes.   However, the Free Exercise Clause does not play such a role in federal jurisprudence.  In Bollard, the court distinguished between a decision made pursuant to the church-minister employment relationship and harassing behavior that has no correlation to the church's method of choosing their clergy.  Bollard, at 947.   In Bollard, the plaintiff was a novice of the

Society of Jesus, an order of the Jesuits.  He alleged that he was sexually harassed by his superiors and found the conduct so severe that he had to leave the order.  The court found that the Free Exercise Clause did not prohibit Bollard from bringing his claim because the purported harassment had no relation to the church's decisions regarding employment of its clergy.

> Because Title VII applies without a constitutionally compelled exception where, as here, the defendant church is neither exercising its constitutionally protected prerogative to choose its ministers nor embracing the behavior at issue as a constitutionally protected religious practice, we find that plaintiff Bollard has stated a claim sufficient to overcome a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

Bollard, at 944.  See also, Elvig v. Calvin Presbyterian Church, 375 F.3d 951, 953 (9th Cir. 2004) (plaintiff asserted "narrower and thus viable sexual harassment and retaliation claims that do not implicate protected employment decisions;" reversal of dismissal)

Here, the plaintiff claims that he was denied employment opportunities because of his race.  This is an issue inextricably entwined with the church's decision regarding his employment.  "We cannot conceive how the federal judiciary could determine whether an employment decision concerning a minister was based on legitimate or illegitimate grounds without inserting ourselves into a realm where the Constitution forbids us to tread, the internal management of a church."  Combs v. Central Texas Annual Conference of United Methodist Church, 173 F.3d 343, 350 (5th Cir. 1999).  Therefore, pursuant to the constitutional mandate of the Free Exercise Clause, we lack subject matter jurisdiction and must defer our consideration of this matter without further inquiry.

7

Because we find that we do not have subject matter jurisdiction over the present case, we decline to address the plaintiff's additional claims, including the claims addressing the defendants' alleged treatment of the plaintiff BOCED.  As we are lacking subject matter jurisdiction over the plaintiff's' federal claims, we also lack subject matter jurisdiction over the plaintiff's state law claims and will not, therefore, exercise supplemental jurisdiction.  Accordingly, the Court will dismiss the plaintiff's complaint in its entirety.

III.    CONCLUSION

For the foregoing reasons, the Court grants the defendants' motion to dismiss [Doc. # 12] and dismisses the plaintiff's complaint in its entirety.

SO ORDERED this __7th___ day of February, 2006 at Bridgeport, Connecticut.

_____/s/_____
Warren W. Eginton
Senior United States District Judge

8